## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| DOOBIE BARRERA, Individually and For Others Similarly Situated | Case No. _____ |
| | Jury Trial Demanded |
| v. | |
| KELLY SERVICES GLOBAL, LLC | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Doobie Barrera (Barrera) brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from Kelly Services Global, LLC (Kelly Services).

2.      Kelly Services employed Barrera as one of its Day Rate Employees (defined below).

3.      Kelly Services pays Barrera and the other Day Rate Employees a flat sum for each day worked and no overtime wages (Kelly Services' "day rate pay scheme").

4.      Barrera and the other Day Rate Employees regularly work more than 40 hours in a workweek.

5.      But Kelly Services does not pay them overtime wages for hours worked in excess of 40 in a workweek.

6.      Instead, Kelly Services pays Barrera and the other Day Rate Employees under its day rate pay scheme.

7.      Kelly Services misclassifies Barrera and the other Day Rate Employees as exempt from overtime.

8.      But Kelly Services never paid Barrera and the other Day Rate Employees on a salary basis.

9.      Kelly Services' day rate pay scheme violates the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA) by depriving Barrera and the other Day Rate Employees of overtime when they work more than 40 hours in a week.

10.     Likewise, Kelly Services' day rate pay scheme violates the Pennsylvania Wage Payment and Collection Law ("WPCL") by depriving Barrera and the other Day Rate Employees of earned overtime wages on their regular paydays and/or following the termination of their employment.

**JURISDICTION & VENUE**

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.     This Court has general personal jurisdiction over Kelly Services because Kelly Services is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

14.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in Allegheny County, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

15.     Specifically, Barrera primarily worked for Kelly Services in Allegheny County, Pennsylvania.

**PARTIES**

16.     Barrera worked for Kelly Services as an Integrated Network Site Superintendent from approximately October 2022 through May 2023.

17.     Throughout his employment, Kelly Services paid Barrera under its day rate pay scheme.

18.     Barrera's written consent is attached as **Exhibit 1**.

19.     Barrera brings this action on behalf of himself and all other similarly situated employees who Kelly Services paid under its day rate pay scheme.

20.     The putative FLSA collective of similarly situated employees is defined as:

> **All Kelly Services employees who were paid a flat sum for each day worked at any time during the past 3 years through final resolution of this action ("FLSA Collective Members").**

21.     Barrera also seeks to represent a class under the PMWA and WPCL pursuant to FED. R. CIV. P. 23.

22.     The putative Pennsylvania class of similarly situated employees is defined as:

> **All Kelly Services employees in, or based out of, Pennsylvania[1] who were paid day rate with no overtime at any time during the past 3 years (the "Pennsylvania Class Members").**

23.     The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the Day Rate Employees.

24.     Kelly Services is a Michigan limited liability company headquartered in Troy, Michigan.

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

25.     Kelly Services may be served with process by serving its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

## COVERAGE UNDER THE FLSA

26.     At all relevant times, Kelly Services was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

27.     At all relevant times, Kelly Services was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, Kelly Services was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones, vehicles, tools, equipment, and personal protective gear, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

29.     At all relevant times, Kelly Services has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30.     At all relevant times, the Day Rate Employees were Kelly Services' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31.     At all relevant times, the Day Rate Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

32.     Kelly Services is a staffing company that bills itself as "creat[ing] limitless opportunities by connecting people to work in ways that enrich their lives."[2]

---

[2] https://www.kellyservices.com/ (last visited May 9, 2025).

33.    To meet its business objectives, Kelly Services hires workers, like Barrera and the other Day Rate Employees, to provide services to its clients.

34.    Kelly Services routinely schedules Barrera and the other Day Rate Employees to work more than 40 hours a workweek.

35.    Instead of paying them at 1.5 times their regular rates of pay for hours worked in excess of 40 in a workweek, Kelly Services pays them a flat day rate for all hours worked, including hours after 40 a workweek.

36.    While exact job titles and job duties may differ, these employees are subjected to the same or similar pay practice—Kelly Services' day rate pay scheme.

37.    For example, Barrera worked for Kelly Services as an Integrated Network Site Supervisor, in and around Allegheny County, Pennsylvania from approximately October 2022 through May 2023.

38.    As an Integrated Network Site Supervisor, Barrera's job duties included overseeing contractors installing electrical equipment, ensuring electrical installation projects were properly, safely and timely completed, as well as reporting progress to Kelly Services' client as appropriate.

39.    Barrera regularly worked in excess of 40 hours in a workweek.

40.    Indeed, Barrera typically worked 5 to 7 days a week for 10 to 14 hours a day (50 to 98 hours a workweek).

41.    Kelly Services knew Barrera worked these hours because it required him to record his hours worked through its designated timekeeping system.

42.    Throughout his employment, Kelly Services paid him under its day rate pay scheme.

43.    Specifically, Kelly Services paid Barrera a day rate of approximately $550 for each day he actually worked but no overtime wages.

44.     As a result, Kelly Services fails to pay Barrera required overtime wages when he worked over 40 hours in a workweek, in violation of the FLSA and PMWA.

45.     Additionally, Kelly Services paid Barrera a "per diem" of approximately $100 a day, including during workweeks he returned home.

46.     Barrera and the other Day Rate Employees perform their jobs under Kelly Services' supervision and use materials, equipment, and technology Kelly Servies approves and supplies.

47.     Kelly Services requires Barrera and its other Day Rate Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their job duties.

48.     At the end of each pay period, Barrera and the other Day Rate Employees receive wages from Kelly Services that are determined by common systems and methods that Kelly Services selects and controls.

49.     Kelly Services requires the other Day Rate Employees to record the number of hours they work each workday and workweek.

50.     Like Barrera, the other Day Rate Employees regularly work more than 40 hours a workweek.

51.     Each Day Rate Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

52.     Indeed, like Barrera, the other Day Rate Employees typically work 10 to 14 hours a day and 5 to 7 days a week (50 to 98 hours a workweek).

53.     Barrera and the other Day Rate Employees work in accordance with the schedule set by Kelly Services (and/or its clients).

54.     But like Barrera, when the other Day Rate Employees work more than 40 hours in a workweek, Kelly Services does not pay them overtime of at least 1.5 times their regular rates of pay.

55.    Rather, like Barrera, Kelly Services pays the other Day Rate Employees only a flat sum for each day worked and no overtime wages under its day rate pay scheme.

56.    And Kelly Services does not pay Barrera and the other Day Rate Employees on a "salary basis."

57.    That is, Kelly Services does not pay the Day Rate Employees a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

58.    Rather, Kelly Services only pays Barrera and the other Day Rate Employees their set day rates for the actual days they work.

59.    If Barrera and the other Day Rate Employees do not work, they do not get paid.

60.    Barrera's and the other Day Rate Employees' day rates do not increase when they work more than 40 hours in a workweek.

61.    Thus, Kelly Services never paid Barrera and the other Day Rate Employees on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

62.    Barrera and the other Day Rate Employees are therefore non-exempt from overtime and entitled to overtime wages.

63.    But Kelly Services does not pay Barrera and the other Day Rate Employees overtime wages when they work more than 40 hours in a workweek, in willful violation of the FLSA and Pennsylvania law.

64.    Likewise, Kelly Services fails to pay Barrera and the other Day Rate Employees their earned overtime wages on their regular paydays and/or following the termination of their employment in violation of the WPCL.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

65.     Barrera brings his claims as a class and collective action on behalf of himself and the other Day Rate Employees.

66.     The Day Rate Employees are uniformly victimized by Kelly Services' day rate pay scheme.

67.     Other Day Rate Employees worked with Barrera and indicated they were paid in the same manner under Kelly Services' same or similar day rate pay scheme.

68.     Based on his experience with Kelly Services, Barrera is aware Kelly Services' unlawful practices were imposed on other Day Rate Employees.

69.     The Day Rate Employees are similarly situated in the most relevant respects.

70.     Even if their precise job duties and locations vary, these differences do not matter for the purpose of determining their entitlement to overtime wages.

71.     Any relevant exemption defense(s) would require Kelly Services to pay the Day Rate Employees on a salary basis.

72.     Because Kelly Services fails the salary basis test with respect to the Day Rate Employees, the specific job duties performed by Day Rate Employees are largely irrelevant.

73.     Therefore, the specific job titles or job locations of the Day Rate Employees do not prevent class or collective treatment.

74.     Rather, Kelly Services' day rate pay scheme renders Barrera and the other Day Rate Employees similarly situated for the purpose of determining their right to overtime wages.

75.     Kelly Services' records reflect the number of days and/or hours recorded worked each week by the Day Rate Employees.

76.     Kelly Services' records also show the Day Rate Employees were paid a flat daily sum and no overtime wages for the hours they worked in excess of 40 in a workweek.

77.    The back wages owed to Barrera and the other Day Rate Employees can therefore be calculated using the same formula applied to the same records.

78.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Kelly Services' records, and there is no detraction from the common nucleus of liability facts.

79.    Therefore, the issue of damages does not preclude class or collective treatment.

80.    Barrera's experiences are therefore typical of the experiences of the Day Rate Employees.

81.    Barrera has no interest contrary to or in conflict with the other Day Rate Employees.

82.    Like each Day Rate Employee, Barrera has an interest in obtaining the unpaid wages owed under federal and Pennsylvania law.

83.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this Action.

84.    Absent this class and collective action, many Day Rate Employees will not obtain redress for their injuries, and Kelly Services will reap the unjust benefits of violating the FLSA and Pennsylvania law.

85.    Further, even if some of the Day Rate Employees could afford individual litigation, it would be unduly burdensome to the judicial system and Kelly Services.

86.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Employees' claims.

87.    The questions of law and fact that are common to each Day Rate Employee predominate over any questions affecting solely the individual members.

88.    Among the common questions of law and fact are:

a.      Whether Kelly Services applied its day rate pay scheme to the Day Rate
Employees;

b.      Whether Kelly Services applied its day rate pay scheme deprived the Day Rate
Employees of overtime when they worked more than 40 hours in a workweek;

c.      Whether Kelly Services' day rate pay scheme deprived the Day Rate
Employees of earned overtime wages on their regular paydays and/or
following the termination of their employment in violation of the WPCL;

d.      Whether the Day Rate Employees are non-exempt employees entitled to
overtime wages;

e.      Whether Kelly Services' day rate pay scheme satisfies the "salary basis" test;

f.      Whether Kelly Services' decision to classify the Day Rate Employees as exempt
from overtime was made in good faith;

g.      Whether Kelly Services' decision not to pay the Day Rate Employees overtime
wages was made in good faith; and

h.      Whether Kelly Services' FLSA violations were willful?

89.     Kelly Services' day rate pay scheme deprived Barrera and the other Day Rate
Employees of the overtime wages they are owed under federal and Pennsylvania law.

90.     As part of its regular business practices, Kelly Services intentionally, willfully, and
repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and PMWA with respect
to the Day Rate Employees.

91.     There are many similarly situated Day Rate Employees who have been denied overtime
pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this
lawsuit and the opportunity to join it.

92.     This notice should be sent to the Day Rate Employees pursuant to 29 U.S.C. § 216(b).

93.    The Day Rate Employees are known to Kelly Services, are readily identifiable, and can be located through Kelly Services' business and personnel records.

## KELLY SERVICES' VIOLATIONS WERE WILLFUL

94.    Kelly Services knew it was subject to the FLSA's and PMWA's overtime provisions.

95.    Kelly Services knew the FLSA and PMWA required it to pay non-exempt employees, including the Day Rate Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

96.    Kelly Services knew each Day Rate Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed because it expected and required them to do so.

97.    Kelly Services knew the Day Rate Employees were its nonexempt employees.

98.    Kelly Services knew it paid the Day Rate Employees by the day.

99.    Kelly Services knew it paid the Day Rate Employees a flat daily sum and no overtime.

100.    Kelly Services knew it did not pay the Day Rate Employees on a "salary basis."

101.    Kelly Services knew it did not pay the Day Rate Employees any guaranteed salary that was not subject to reduction based on the number of hours or days worked.

102.    Kelly Services knew its day rate pay scheme did not satisfy the salary basis test.

103.    Kelly Services knew it needed to pass the salary basis test to qualify for the exemptions it might claim with respect to the Day Rate Employees.

104.    Nonetheless, Kelly Services misclassified the Day Rate Employees as exempt and refused to pay them overtime.

105.    Kelly Services' decision to misclassify Barrera and the other Day Rate Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

106.    Kelly Services' failure to pay Barrera and the other Day Rate Employees overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

107.    Kelly Services knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and Pennsylvania law.

108.    Kelly Services' failure to pay all earned wages, including overtime wages, to the Day Rate Employees on their regularly scheduled paydays and/or upon termination of employment was not the result of a *bona fide* dispute.

109.    Kelly Services knowingly, willfully, and/or in reckless disregard carried out its day rate pay scheme that deprived the Day Rate Employees of premium overtime wages in violation of the FLSA and Pennsylvania law.

110.    Indeed, Kelly Services (and its affiliated entities) have been sued on numerous occasions by employees for failing to pay them overtime wages, including for paying them under its same day rate pay scheme. *See, e.g., Merrill v. Kelly Servs. Global, LLC*, No. 4:24-cv-04230 (S.D. Tex.); *Zandante v. Kelly Servs. Global, LLC*, No. 4:24-cv-03303 (S.D. Tex.); *Collier v. Corp. Employment Resources, Inc. d/b/a Kelly Servs.*, No. 2:23-cv-10500 (E.D. Mich.); *Lowe v. Corp. Employment Resources, Inc. d/b/a Kelly Servs.*, No. 02:23-cv-10484-NAG-JJCG (E.D. Mich.); *Kring v. Kelly Servs. Global, LLC*, No. No. 2:23-cv-10858-MFL-EAS (E.D. Mich.); *Abdelhak v. Kelly Servs., Inc.*, No. 2:22-cv-12548-LVP-KGA (E.D. Mich.); *Ward v. Guidant Global, Inc. d/b/a Kelly Servs. Group*, No. 2:22-CV-01002 (W.D. Pa.); *Smith v. Guidant Global, Inc., et al.*, No. 2:22-CV-01364 (W.D. Pa.); *Larry v. Kelly Servs., Inc.*, No. 2:20-CV-11481-DPH-EAS (E.D. Mich.).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

123.    Barrera brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

124.    Kelly Services violated, and is violating, the FLSA by employing non-exempt employees (Barrera and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

125.    Kelly Services' unlawful conduct harmed Barrera and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

126.    Accordingly, Kelly Services owes Barrera and the other FLSA Collective Members the difference between the wages actually paid and the required overtime wages.

127.    Because Kelly Services knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, Kelly Services owes Barrera and the other FLSA Collective Members these wages for at least the past 3 years.

128.    Kelly Services is also liable to Barrera and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

129.    Finally, Barrera and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

<u>COUNT II</u>
FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
(PENNSYLVANIA CLASS)

131.    Barrera brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

132.    Kelly Services' conduct violates the PMWA (43 Pa. Stat. §§ 333.101, *et seq.*).

133.    At all relevant times, Kelly Services was subject to the PMWA because Kelly Services was (and is) an "employer" within the meaning of the PMWA. *See* 43 Pa. Stat. § 333.103(g).

134.    At all relevant times, Kelly Services employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 Pa. Stat. § 333.103(h).

135.    The PMWA requires employers, like Kelly Services, to pay non-exempt employees, including Barrera and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a week. 43 Pa. Stat. § 333.104(c); *see* 34 Pa. Code §§ 231.41-43.

136.    By imposing its day rate pay scheme on Barrera and the other Pennsylvania Class Members, Kelly Services violated 43 Pa. Stat. § 333.104(c) and/or 34 Pa. Code §§ 231.41-43.

137.    Specifically, Kelly Services violated, and is violating, the PMWA by employing non-exempt employees (Barrera and the other Pennsylvania Class Members) for workweeks longer than 40 hours without paying such employees overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a week. *See* 43 Pa. Stat. § 333.104(c); *see also* 34 Pa. Code §§ 231.41-43.

138.    Kelly Services' unlawful conduct harmed Barrera and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

139.    Accordingly, Kelly Services owes Barrera and the other Pennsylvania Class Members the difference between the wages actually paid and the required overtime wages, plus prejudgment interest and all available penalty wages. *See* 43 Pa. Stat. § 333.113.

140.    Finally, Barrera and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 Pa. Stat. § 333.113.

## COUNT III
### FAILURE TO PAY EARNED WAGES UNDER THE WPCL
### (PENNSYLVANIA CLASS)

142.    Barrera brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

143.    Kelly Services' conduct violates the WPCL (43 Pa. Stat. §§ 260.1, *et seq.*).

144.    At all relevant times, Kelly Services was subject to the WPCL because Kelly Services was (and is) an "employer" within the meaning of the WPCL. *See* 43 Pa. Stat. § 260.2a.

145.    At all relevant times, Kelly Services employed Barrera and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

146.    The WPCL requires employers, like Kelly Services, to pay employees, including Barrera and the other Pennsylvania Class Members, all wages, including overtime wages, earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 Pa. Stat. §§ 260.3 and 260.5.

147.    Kelly Services violated, and is violating, the WPCL by depriving its Pennsylvania Class Members of the overtime wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 Pa. Stat. §§ 260.3 and 260.5.

148.    Barrera's and the other Pennsylvania Class Members' earned wages remained unpaid for more than 30 days from the date they were earned, due, and payable.

149.    Kelly Services' unlawful conduct harmed Barrera and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

150.    Kelly Services' failure to pay Barrera and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

151.    Rather, Kelly Services knowingly failed to pay earned wages to Barrera and the other Pennsylvania Class Members.

152.    Accordingly, Kelly Services owes Barrera and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 Pa. Stat. § 260.9a.

153.    Kelly Services also owes Barrera and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages. *See* 43 Pa. Stat. § 260.10.

154.    Finally, Barrera and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 Pa. Stat. § 260.9a(f).

### JURY DEMAND

155.    Barrera demands a trial by jury.

### RELIEF SOUGHT

Barrera, individually and on behalf of the other Day Rate Employees, seeks the following relief:

a.    An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the Day Rate Employees allowing them to join this collective action by filing a written notice of consent;

b.    An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Barrera and his counsel to represent the interests of the Day Rate Employees;

d.    An Order pursuant to Section 16(b) of the FLSA finding Kelly Services liable for unpaid overtime wages due to Barrera and the Day Rate Employees, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Kelly Services liable to Barrera and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f.      An Order finding Kelly Services liable to Barrera and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

g.      A Judgment against Kelly Services awarding Barrera and the other Day Rate Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and WPCL;

h.      An Order awarding attorney's fees, costs, and expenses;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated: May 13, 2025                     Respectfully submitted,

                                        JOSEPHSON DUNLAP LLP

                                        By: /s/ Michael A. Josephson
                                            Michael A. Josephson
                                            PA ID No. 308410
                                            Andrew W. Dunlap
                                            TX Bar No. 24078444
                                            11 Greenway Plaza, Suite 3050
                                            Houston, Texas 77046
                                            Phone: (713) 352-1100
                                            Fax:    (713) 352-3300
                                            mjosephson@mybackwages.com
                                            adunlap@mybackwages.com

                                            Richard J. (Rex) Burch
                                            TX Bar No. 24001807
                                            BRUCKNER BURCH PLLC
                                            11 Greenway Plaza, Suite 3025
                                            Houston, Texas 77046
                                            Phone: (713) 877-8788
                                            Fax:    (713) 877-8065
                                            rburch@brucknerburch.com

Joshua P. Geist
PA ID No. 85745
William F. Goodrich
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Avenue
Pittsburgh, Pennsylvania 15212
Phone: (412) 766-1455
Fax:     (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR BARRERA AND
THE DAY RATE EMPLOYEES**